## B. M. LOYD v. STATE.

No. A-1106. Opinion Filed June 6, 1911.

(116 Pac. 959.)

1. **FORMER JEOPARDY** — Discharge of Jury — Effect — Acquittal. Where a defendant is put upon trial in a court of competent jurisdiction upon an indictment or information sufficient to sustain a conviction, and the jury has been impaneled and sworn to try the case, and the jury is unnecessarily discharged without the defendant's consent before they arrive at a verdict, such discharge operates as an acquittal of the defendant.

2. **SAME—Elements of Former Jeopardy.** A defendant cannot twice be put in jeopardy of life and liberty for the same offense, but before jeopardy attaches each of the following conditions must exist: First, the defendant must be put upon trial before a court of competent jurisdiction; second, the indictment or information against the defendant must be sufficient to sustain a conviction; third, the jury must have been impaneled and sworn to try the case; fourth, after having been impaneled and sworn the jury must have been unnecessarily discharged by the court; fifth, such discharge of the jury must have been without the consent of the defendant. When these things concur, then the discharge of the jury constitutes jeopardy and operates as an acquittal of the defendant, and he cannot again be placed upon trial for the same offense.

3. **HOMICIDE—Venue—Indictment—Place of Death.** Where a defendant is charged with murder, the crime, if any, is complete

when the fatal blow is struck or the fatal shot is fired, and the district or superior court of such county has jurisdiction to try said offense; and it is altogether immaterial as to whether or not the deceased died in such county, and the place of the death of the deceased need not be alleged, and, if alleged, such allegation would be surplusage and need not be proven as alleged.

4. **FORMER JEOPARDY—Plea—Procedure.** Where a plea of former jeopardy has been filed and does not involve a disputed question of fact, but merely presents a question of law for the determination of the court, it is not necessary to submit such plea to the consideration of the jury, but the court should pass upon the question of law presented, and either sustain the plea and discharge the defendant, or overrule the plea and place the defendant upon trial upon the merits of said cause.

(Syllabus by the Court.)

*Appeal from District Court, Jefferson County; Roy Hoffman, Judge pro tem.*

B. M. Loyd was convicted of manslaughter, and he appeals. Reversed.

*Jones & Green* and *D. D. Hartsell,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, P. J. It appears from the record in this case that at the January, 1909, term of the district court of Jefferson county, Okla., the defendant was placed regularly on trial in said court, charged with the murder of Ed Henson, alleged to have been committed in said Jefferson county, and that the jury was selected, impaneled and sworn, and counsel for the state and counsel for defendant made their opening statements, and that Charlie Pickett, a witness for the state, was sworn and placed upon the stand, when the county attorney informed the court that he had discovered an error in the information, which alleged that deceased had died in Jefferson county, Okla., when as a matter of fact the deceased, after receiving the fatal wound in Jefferson county, had been carried to El Reno, in Canadian county, for the purpose of being operated upon, and that the deceased died in Canadian county. Whereupon the county attorney requested the court to be permitted to amend the information by stating that the deceased died in Canadian county, state of Oklahoma. Defendant objected to this motion of

the county attorney, and requested the court to instruct the jury to return a verdict of not guilty. The court overruled the motion to instruct the jury to acquit the defendant, and sustained the motion of the county attorney to amend the information. The court withdrew the case from the consideration of the jury and discharged them, and remanded defendant to the custody of the sheriff of Jefferson county, Okla., and set the case for hearing on a future day of the term, to all of which the defendant at the time excepted. The case came on to be heard again at the October, 1910, term of the district court of Jefferson county. Whereupon the defendant entered a plea of former jeopardy in which he alleged that he had already been placed in jeopardy on a valid indictment before a court of competent jurisdiction, and that a jury was impaneled and sworn and charged with his deliverance, which said jury was over his objection discharged, and that this was for the identical offense of which he is now charged. This plea set forth in detail the proceedings had upon the former trial of this cause. The state did not reply to the plea of former jeopardy. Therefore the allegations therein set forth were admitted to be true, and it was the duty of the court to pass upon the questions of law which were thus presented. The trial court overruled said plea of former jeopardy, to which the defendant at the time excepted. The defendant then declined to plead further in this case. Thereupon the court ordered that the plea of not guilty be entered for him, and the trial of the cause was proceeded with. By overruling the plea of former jeopardy, the court held that the matters of fact therein set forth did not constitute a bar to the further prosecution of the appellant for the same offense. If the trial court had been correct in holding upon the first trial that the information alleging that the fatal wound was inflicted in Jefferson county, and that the deceased died in said Jefferson county, and that a conviction could not be sustained upon proof that deceased had died in Canadian county, then the action of the trial court in discharging the jury without defendant's consent would not have constituted jeopardy, and the defendant might have been legally tried upon a

proper information or indictment for the same offense. But if the trial court was in error upon this question, then as ·a question of law, upon the second trial of appellant, the trial court should have held that the plea of former jeopardy was good and was a complete bar to a second prosecution of appellant for the same offense. This is not an open question in Oklahoma. In the case of *Schrieber v. Clapp,* 13 Okla.·218, 74 Pac. 317, Judge Burford, speaking for the Supreme Court of Oklahoma Territory, said:

"The general rule is that the prisoner has been put in jeopardy when he has been put upon trial before a court of competent jurisdiction, upon an indictment or information sufficient to sustain a conviction, and the jury has been impaneled and sworn to try the case, and the jury is discharged without sufficient cause, and without the defendant's consent; and such discharge of the jury, although improper, results in an acquittal of the defendant. Cooley, Const. Lim. (6th Ed.) p. 399; Clark's Crim Law, § 174; 1 Bishop, New Crim. Law, 3, 821; Abbott's Trial Brief, § 97; *People v. Horn* [7 Cal. 17], 11 Pac. 470; *Lee v. State,* 26 Ark. 260 [7 Am. Rep. 611]; *Teat v. State,* 53 Miss. 453 [24 Am. Rep. 708]; *Whitmore v. State,* 43 Ark. 271; *Williams v. Commonwealth,* 78 Ky. 93; *Jones v. State,* 55 Ga. 625; *Mount v. State,* 14 Ohio, 295 [45 Am. Dec. 542]; *Helm v. State,* [66 Miss. 537], 6 South. 322; *State v. McKee* [1 Bailey (S. C.) 651], 21 Am. Dec. 499; *State. v. Wilson,* 50 Ind. 487 [19 Am. Rep. 719]; *People v. Cage,* 48 Cal. 323 [17 Am. Rep. 436]; *O'Brian v. Commonwealth,* 9 Bush [Ky.] 333 [15 Am. Rep. 715]; *Hilands v. Commonwealth,* 111 Pa. 1 [2 Atl. 70, 56 Am. Rep. 235]; *Pizono v. State* [20 Tex. App. 139], 54 Am. Rep. 511; *People v. Barrett* [2 Caines (N. Y.) 304], 2 Am. Dec. 239; *Wright v. State,* 7 Ind. 324; *McCorkle v. State,* 14 Ind. 39."

This question is discussed with great ability and at length and all of the authorities are cited in the case of *Gillespie v. State,* 168 Ind. 316, 80 N. E. 835. After a full discussion of the entire matter, that court announces its conclusions as follows:

"The following cases and authorities are in harmony with our own decisions, as they hold or affirm the doctrine that in a criminal prosecution the unnecessary discharge of the jury, after it had been impaneled and sworn, without the consent of the defendant, operates as an acquittal. *Commonwealth v. Fitz-*

*patrick* (1888) 121 Pa. 109, 15 Atl. 466, 1 L. R. A. 451, 6 Am. St. Rep. 757; *State v. Callendine* (1859) 8 Iowa, 288; *Hines v. State* (1873) 24 Ohio St. 134; *Helm v. State* (1889) 66 Miss. 537, 6 South. 322; *State v. McKee* (1830) 1 Bailey (S. C.) 651, 21 Am. Dec. 499, and cases cited in notes; *State v. Robinson* (1894) 46 La. Ann. 769, 15 South. 146; *Robinson v. Commonwealth* (1889) 88 Ky. 386, 11 S. W. 210; *People v. Cage* (1874) 48 Cal. 323, 17 Am. Rep. 436; *Ex parte Clement* (1873) 50 Ala. 459; *Bell v. State* (1870) 44 Ala. 393; *Ex parte Maxwell* (1876) 11 Nev. 428; *Whitmore v. State* (1884) 43 Ark. 271; *Ward v. State* (1839) 1 Humph. (Tenn.) 253; *O'Brian v. Commonwealth* (1872) 9 Bush (Ky.) 333, 15 Am. Rep. 715; *State v. Richardson* (1896), 47 S. C. 166, 25 S. E. 220, 35 L. R. A. 238; *Hilands v. Commonwealth* (1887) 114 Pa. 372, 6 Atl. 267; *State v. Sommers* (1895) 60 Minn. 90, 61 N. W. 907; *Scrieber v. Clapp* (1903) 13 Okla. 215, 74 Pac. 316; *People v. Dolan* (1883) 51 Mich. 610, 17 N. W. 78; *Ex parte Tice* (1897) 32 Ore. 179, 49 Pac. 1038; *State v. Steeves* (1896) 29 Ore. 85, 43 Pac. 947; *People v. Taylor* (1898) 117 Mich. 583, 76 N. W. 158; *Commonwealth v. Tuck* (1838) 20 Pick. (Mass.) 356; *Kepner v. United States* (1904) 195 U. S. 100, 24 Sup. Ct. 797, 49 L. Ed. 114; *Allen v. State* (1906) [52 Fla. 1], 41 South. 593 [120 Am. St. Rep. 188], and authorities cited; *Lee v. Smith* (1870) 26 Ark. 260, 7 Am. Rep. 611; *McDonald v. State* (1891) 79 Wis. 651, 48 N. W. 863, 24 Am. St. Rep. 740, and authorities cited; *People v. Ny Sam Chung* (1892) 94 Cal. 304, 29 Pac. 642, 28 Am. St. Rep. 729; Gillett, Crim. Law (2d Ed.) § 31; 1 Bishop, Crim. Law (8th Ed.) §§ 1012-1014, *et seq.*; Clark, Crim. Law, p. 374; 12 Cyc. 270; 17 Am. and Eng. Ency. Law (2d Ed.) 584; Cooley, Const. Lim. (7th Ed.) 467, 468. Judge Cooley, in the work last cited, said: 'A person is in legal jeopardy when he is put upon trial before a court of competent jurisdiction upon indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance. And a jury is said to be thus charged when they have been impaneled and sworn.' "

A few authorities do hold that a verdict of acquittal or conviction must have been rendered before a former trial can be pleaded in bar of a second prosecution for the same offense. But the Constitution of this state in mandatory terms deprives us of the power to adopt the reasoning of these cases. The latter

clause of section 21, of article 2, of our Constitution puts this question at rest as follows: "Nor shall any person be twice put in jeopardy of life or liberty for the same offense." It does not say that no person shall be tried twice for the same offense, but the language is unequivocal to the effect that no person shall twice be put in jeopardy for the same offense. The word "jeopardy" has a clearly defined and fixed legal meaning, and that meaning is that when a person has been put in danger of a conviction, that this is jeopardy, and that it attaches whenever a defendant is placed upon a trial in a court of competent jurisdiction, upon a valid indictment or information, and a jury has been duly impaneled and sworn. This matter is so well settled and the authorities above stated are so conclusive that it would be a useless consumption of time for us to discuss the question further. It is enough for us to know that in such cases our Constitution forbids a second prosecution for the same offense, where jeopardy has attached upon the first prosecution.

The next question before us is as to whether or not the trial court was correct in holding that the information which charged that the fatal wounds were inflicted upon the deceased by appellant in Jefferson county and that the deceased died in said Jefferson county would not be supported by proof of the fact that deceased died in Canadian county, and that therefore a fatal variance would exist between the allegations of the information and the testimony in the case. If this ruling was correct, then appellant was not in jeopardy of this offense upon the first trial on account of the insufficiency of the information; but if the trial court was in error upon this matter, then the proceedings in the first trial of this cause were valid and the defendant's plea of former jeopardy should be sustained. As to the sufficiency of the first information, the case of *Moran v. State,* 14 Okla. 549, 78 Pac. 113, is conclusive. Judge Hainer there said:

"It is next claimed that the court erred in permitting the territory to introduce testimony showing the deceased came to his death in the Indian Territory, and not in Oklahoma Territory. The indictment charges that the fatal shot was fired in Comanche county, Oklahoma Territory, on the 4th day of August, 1901,

and that the deceased Joseph Philip Beemblossom, did then and there instantly die. The proof shows that the shot was fired in what is now Comanche county, Okla. T., on the 4th day of August, 1901, and that the deceased died from the effects of such wound at Rush Springs, Ind. T., above five or six hours after receiving the mortal wound, and that Rush Springs, Ind. T., is about two miles from the east line of Comanche county, Okla. T. It is contended by the plaintiff in error that this constitutes a fatal variance between the allegations of the indictment and the proof, and that the jury should have been instructed that in the event they should find such facts to be true, then they should return a verdict of not guilty. In our opinion, the variance was not material.

"In *Albright v. Territory*, 11 Okla. 497, 69 Pac. 789, this court held that: 'A person charged with the commission of the crime of murder must be indicted and tried in the county where the injury which caused the death was inflicted, and it is not necessary to allege the place of death.'

"In *State v. Bowen*, 16 Kan. 476, Mr. Justice Brewer, in discussing this subject, uses the following language: 'It seems to us, without pursuing the authorities further, reasonable to hold that as the only act which the defendant does toward causing the death is in giving the fatal blow, the place where he does that is the place where he commits the crime, and that the subsequent wanderings of the injured party, uninfluenced by the defendant, do not give an ambulatory character to the crime, at least, that those movements do not, unless under express warrant of the statute, change the place of offense; and that while it may be true that the crime is not completed until death, yet that the death simply determines the character of the crime committed in giving the blow, and refers back to and qualifies that act.'

"In *United States v. Guiteau*, 1 Mackey [D. C.] 498, [47 Am. Rep. 247], the Supreme Court of the District of Columbia held that it had jurisdiction to try, convict, and sentence the murderer of Pres. Garfield within the District of Columbia, although the shot was fired in the District of Columbia and the death occurred in the state of New Jersey. An application having been made to Mr. Justice Bradley, of the Supreme Court of the United States, for a writ of *habeas corpus*, in stating his reasons for refusing the writ he uses the following language: 'It is contended that the murder was committed only partly within the District of Columbia and partly within the state of New Jersey, and therefore cannot be said to have been committed within the Dis-

trict of Columbia. By the strict technicality of the common law this position would probably be correct, although Lord Chief Justice Hale, one of the greatest criminal lawyers and judges that ever lived, used the following language: "At common law," he says, "if a man had been stricken in one county and died in another, it was doubtful whether he were indictable or triable in either, but the more common opinion was that he might be indicted where the stroke was given, for the death was but a consequence, and might be found, though in another county, and if the party dies in another county, the body was removed into the county where the stroke was given, for the coroner to take an inquest *super visum corporis.*" This case shows that in Lord Chief Justice Hale's opinion the principal crime was committed where the stroke was given, and that when the production of the dead body gave the jury ocular demonstration of the *corpus delicti,* the difficulty of jurisdiction was overcome. But to remove the doubt as to the power of jurors to try such a case, it was enacted by the statute 2 and 3 Edward VI, c. 24, that the murderer might be tried in the county where the death occurred; and to remedy the difficulty where the stroke, or the death, happened out of England, it was enacted by a subsequent statute, 2 George II, c. 21, that the trial might be in the county where the stroke was given if the party dies out of the realm; or where the death occurred, if the stroke was given out of the realm; this, in effect, making the murder a crime in the county in which either the stroke was given or the death occurred.'

"The crime was committed when the ratal shot was fired and the mortal wound inflicted in Comanche county, Okla. T., and the death which occurred in the Indian Territory merely determined the character of the crime, and only referred back to and qualified the homicidal act. It follows that the jurisdiction of the crime was properly laid in Oklahoma, and not in the Indian Territory."

We give our entire assent to the reasoning of Judge Hainer as above set forth. We think that the position of the Supreme Court of Oklahoma Territory upon this question is unanswerable. The crime, if any, was committed and was complete when the fatal blow was struck in Jefferson county, and the fact that the deceased died in Canadian county was altogether immaterial. The death of the deceased from this blow merely determined the character of the crime committed, and only referred

back to and qualified the homicidal act. The trial court therefore erred upon the first trial in holding the information to be invalid, and in withdrawing the case from the consideration of and discharging the jury. This being true, appellant's plea of former jeoparly should be sustained.

But in order that there may be no misunderstanding about this matter, we desire to state that before jeopardy attaches the following conditions must exist: First. The defendant must be put upon trial before a court of competent jurisdiction. Second. The information or indictment against the defendant must be sufficient to sustain a conviction. Third. The jury must have been impaneled and sworn to try the case. Fourth. After having been so impaneled and sworn to try the case the jury must have been unnecessarily discharged. Fifth. That such discharge of the jury must have been without the consent of the defendant. When those things all occur, then the discharge of a jury operates as an acquittal of the defendant. We will not undertake to decide as to what would constitute a sufficient cause for the discharge of a jury in all cases in order to prevent defendant from claiming that such discharge operated as an acquittal upon the ground of jeopardy. This must be determined upon the ground of necessity as it may appear in each individual case. Neither can we lay down any general rule which would be applicable to all cases as to what would amount to the consent of the defendant to such discharge. These questions can only be determined by the facts of each individual case as they arise. We only desire to be understood as deciding that in this particular case the discharge of the jury was unnecessary because the information was sufficient to sustain a conviction, and as the appellant demanded a verdict and reserved an exception to the action of the trial court in discharging the jury, it cannot be said that he consented to their discharge. There was error in the action of the trial court in overruling the plea of former jeopardy filed in this case. As this plea was based upon and set out the records of the district court of Jefferson county, and as there was no question as to the identity of the offense charged in both

informations, it raised no question of fact to be submitted to the jury, and it should have been sustained by the trial court, and the appellant should have been discharged without the formality of a jury trial.

The judgment of the lower court is reversed and the cause is remanded, with directions to the district court of Jefferson county to sustain the plea of former jeopardy, and discharge the appellant.

ARMSTRONG and DOYLE, JJ., concur.