VAGEL H. ALBRIGHT v. TERRITORY OF OKLAHOMA.

(Filed July 16, 1902.)

MURDER—Indictment, Place of—Allegations. A person charged with the commission of the crime of murder must be indicted and tried in the county where the injury which caused the death was inflicted, and it is not necessary to allege the place of death.

(Syllabus by the court.)

*Error from the District Court of Payne County; before B. F. Burwell, Trial Judge.*

*Lowry & Workman, C. B. Case* and *A. J. Biddison,* for plaintiff in error.

*J. C. Robberts, Attorney General,* and *C. L. Burdick,* for defendant in error.

Opinion of the court by

· HAINER, J.: The plaintiff in error, Vagel H. Albright, was indicted in the district court of · Payne county, on the charge of the murder of William G. Tribble in Payne county on July 16, 1900, and was convicted of manslaughter in the

—32

first degree, and sentenced to serve a term in the penitentiary for a period of four years. From this judgment the defendant appeals. There is but one question argued by counsel for plaintiff in error, and that is the sufficiency of the indictment in this case. It is contended that the indictment in this case is defective in not alleging the place of the death of the person killed, and that such allegation is material, and necessary to constitute a sufficient indictment. The indictment in this case is as follows:

"Of the September term of the district court of the First judicial district of the territory of Oklahoma, within and for Payne county, in said territory, in the year of our Lord one thousand nine hundred, the grand jurors, having been first duly chosen, selected, impaneled, sworn and charged to inquire of offenses against the laws of the territory of Oklahoma, committed within said county, in the said territory of Oklahoma, upon their oaths aforesaid, in the name and by the authority of the Territory of Oklahoma, do find and present: That at and within said Payne county in said territory, on the 16th day of July, in the year of our Lord one thousand nine hundred, Vagel H. Albright, late of the county aforesaid, on the 16th day of July, in the year of our Lord one thousand nine hundred, in the county of Payne and territory of Oklahoma, aforesaid, then and there being, did then and there unlawfully, purposely, feloneously, maliciously and with a premeditated design to effect the death of William G. Tribble, make an assault in and upon the person of him, the said William G. Tribble, and the said Vagel H. Albright, a certain gun then and there loaded and charged with gun powder and leaden bullets which said gun he, the said Vagel H. Albright in his hand then and there had and held to, against and upon the said William G. Tribble, then and there unlawfully, purposely, feloniously, maliciously and with premeditated design to effect his death, did shoot and discharge; and the said Vagel H. Albright with the leaden bullets aforesaid, out of the gun aforesaid, then and there by

force of the gun powder shot and sent forth as aforesaid, the said William G. Tribble then and there unlawfully, purposely, feloniously, maliciously and with a premeditated design to effect his death did strike, penetrate and wound, giving to said Wiliam G. Tribble then and there with the leaden bulllets aforesaid, so as aforesaid shot, discharged and sent forth out of said gun by the said Vagel H. Albright in and upon the left breast of said William G. Tribble one mortal wound, of which said mortal wound the said William G. Tribble instantly after the same had been inflicted as aforesaid did die, on the said 16th day of July, in the year aforesaid; and the grand jurors aforesaid upon their oath aforesaid do say that the said William G. Tribble, the said Vagel H. Albright in manner and form aforesaid, unlawfully, purposely, feloniously, maliciously and with premeditated design to effect his death, did kill and murder, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the territory of Oklahoma."

At common law the place of death was an essential allegation in the indictment. It was a material averment in the indictment to confer jurisdiction. But this rule of common law has been modified not only by our statute, but by the organic act of this Territory. Section 4949 of the Statutes of 1893 provides as follows:

"The jurisdiction of an indictment for murder or manslaughter, when the injury which caused the death was inflicted in one county, and the party injured dies in another county, or out of the territory, is in the county where the injury was inflicted."

And section 10 of our organic act provides that:

"All offenses committed in said territory, if committed within any organized county, shall be prosecuted and tried within said county, and if committed within territory not em-

braced in any organized county, shall be prosecuted and tried in the county to which such territory shall be attached for judicial purposes."

It will thus be seen that by the provisions of our organic act as well as the clear and unmistakable terms of our statute, a person charged with the commission of the crime of murder must be indicted and tried in the county where the injury which caused the death was inflicted, and it is not necessary to allege the place of death. Kansas has a similar statute. And in passing upon this same question the supreme court of that state in the case of *State v. Bowen,* 16 Kan. 476, said:

"An information for murder is sufficient which charges the giving of the fatal blow in the county in which the prosecution is had, and the fact of ensuing death, although it failed to allege specifically in what county or state the death took place."

Mr. Justice Brewer, in discussing this subject, said:

"It is claimed that the information is insufficient, in that it fails to allege the place of the death. It charges that on the 10th of October, 1874, at the county of Wilson, the defendant inflicted two mortal wounds upon John Hoppeler, of which wounds the said Hoppeler afterward and on October 13, 1874, died, but it does not charge that he died in Wilson county, or in the state. Hence it is said, that as the offense of murder or manslaughter is consummated only by the death of the party assailed, the place of the death is as important as the place of the assault, and that a failure to allege the one is as fatal as a like failure to allege the other. Waiving any question as to the effect of the second clause of sec. 110 of the Criminal Code, (Gen. Stat. p. 838,) and conceding that except upon a strained and unnatural construction there is no allegation as to the place of Hoppeler's death, we still think

the information must be sustained. It does not appear that any question was raised in the district court as to the sufficiency of the information. The defendant plead "not guilty," and went to trial upon it. Perhaps this is immaterial, and the defendant has waived nothing. There has been much confusion and conflict as to the jurisdiction and power to punish in cases in which the fatal blow is given in one county or state, and death ensues in another county or state. So far as counties are concerned, the statute settles all question. (Gen Stat. p. 824, sec. 29.) ˙ It is, however, silent as to cases in which the wound is given outside the state and death ensues within, or the reverse. In *The State v. Carter,* 3 Dutch. 400 the power of the state to punish, was denied in a case where the fatal blow was given in New York and the injured party voluntarily came into New Jersey, and there died. On the other hand, the power was sustained under similar circumstances in the cases of *Tyler v. The People,* 8 Mich. 320, and *Commonwealth v. Macloon,* 101 Mass. 1, in which last case is a very full and exhaustive examination of the authorities, English and American. In the case in 8 Michigan is a dissenting opinion by Judge Campbell, whose judgment in criminal questions is entitled to the highest consideration, in which he holds the law to be, in the absence of statute, that jurisdiction to punish for the homicide is in the state and county in which the fatal blow was struck. In *Ripley v. The State,* 9 Humph. 646, the supreme court of Tennessee decided that according to the principles of common law, where the fatal blow was given in one county, and death ensued in another, jurisdiction of the homicide was in the first county. In *State v. McCoy,* 8 Rob. Rep. 545, followed in *State v. Foster,* 7 La. An. 255, and same cases in La. An. 290, the supreme court sustained the jurisdiction where the fatal blow was given within but death ensued without the state. They rested their decision, however, it should be said, upon an act of the legislature of 1805, adopting the common law of England, which they construed as including a statute of 2 Geo. II, upon this matter. In *The People v. Gill,* 6 Cal. 637, where intermediate the blow and the death a change in the statute had been made,

the crime was held to be of the date of the blow, and governed by that law.    See, also, *Grosvenor v. St. Augustine,* 12 East 244; 1 Bishop Crim. Law, secs. 112, 116; 1 Bishop Cr. Procedure, 51, 52, and cases cited on both sides of the question. It seems to us, without pursuing the authorities further, reasonable to hold that as the only act which the defendant does toward causing the death is in giving the fatal blow, the place where he does that is the place where he commits the crime, and that the subsequent wanderings of the injured party, uninfluenced by the defendant, do not give an ambulatory character to the crime; at least, that those movements do not, unless under express warrant of the statute, change the place of offense; and that while it may be true that the crime is not completed until death, yet that the death simply determines the character of the crime committed in giving the blow, and refers back to and qualifies that act."

The supreme court of Washington, in the case of *State v. Baldwin,* 45 Pac. 650, in construing a similar statute held that in an information for murder, which alleges the time and place where the offense was committed, it is not necessary to allege also the place of death, under the laws of that state, which provides for the trial of criminal actions in the county where the offense has been committed.

We think that the indictment sufficiently alleges that the deceased was shot and killed in Payne county; but, even if it did not, under the provisions of our organic act and the statutes of this Territory, an indictment for murder is sufficient which charges that the injury which caused the death was inflicted in the county in which the prosecution is had, and it is not necessary to specifically allege the place of death. The demurrer to the indictment was, therefore, properly overruled.

There being no error in the record, the judgment of the district court of Payne county is affirmed.    The clerk of this

court will issue a mandate to the district court of Payne county directing the sheriff of said county to enforce the judgment of the district court.

Burwell, J., who presided in the court below, and Burford, C. J., not sitting; Irwin, J., absent; all the other Justices concurring.